Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| CONSEJO DE TITULARES DE PATIO SEÑORIAL | | *REVISIÓN ADMINISTRATIVA* del Departamento de Asuntos del Consumidor |
|---|---|---|
| Recurrido | KLRA202300157 | Caso Núm. |
| Vs. | | C-PON-2020-0002195 |
| PPG ARCHITECTURAL COATING PR, INC., PPG PR, INC. Y RM GENERAL CONTRACTOS, INC. | | Sobre: |
| Recurrentes | | Contrato de Obras y Servicios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece ante nos, PPG Architectural Coatings (PR), INC, y PPG INC. (en adelante, "PPG" o "Recurrente"), quien presenta recurso de *Revisión Judicial* en el que solicita nuestra intervención en una determinación emitida por el Departamento de Asuntos al Consumidor (en adelante "D.A.Co.") el 1 de marzo de 2023, notificada el 3 de marzo de 2023. Mediante dicho dictamen, la agencia declaró *"Con Lugar"* la Querella presentada por el Consejo de Titulares de Patio Señorial (en adelante, "Consejo de Titulares" o "Recurrido").

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, modificamos la determinación de D.A.Co., a fin de relevar a la parte recurrente de la responsabilidad determinada por la agencia a base de la garantía objeto de análisis y, así modificada, confirmamos el

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Juez Ortiz Flores.

dictamen mediante los fundamentos que expondremos a continuación.

I.

El 3 de septiembre de 2020, el Consejo de Titulares presentó Querella ante D.A.Co. en la que alegó incumplimiento de contrato por parte de PPG y RM General Contractor, (en adelante "RM"). Según exponen, para 12 de junio de 2018 el Recurrido contrató con la compañía PPG para la compra de unos productos para pintar el condominio. Alegan que, como parte del contrato se les otorgó una garantía por cinco años. Siendo así, en el mes de agosto de 2019, el Consejo de Titulares presentó reclamación ante PPG por problemas de defectos y deficiencias con la pintura. Según arguyen, ésta se fue desmereciendo tan pronto se terminó de pintar el condominio. En respuesta a dicha reclamación, en septiembre de 2019, PPG le envió una carta al Recurrido en la cual negó toda responsabilidad por la deficiencia y defectos de la pintura y responsabilizó al contratista RM por cualquier desperfecto, ya que este fue el encargado de la mano de obra. Adicionalmente, le ofreció un crédito al Recurrente para la compra de otro material, en busca de evitar la presentación de un pleito. Esta oferta no fue aceptada por el Consejo de Titulares, lo cual nos llevó a la reclamación ante nuestra consideración.

Ante tal situación, el 23 de octubre de 2020, PPG presentó *Contestación a Querella*, en síntesis, alegó que, el Consejo de Titulares no aceptó la garantía ofrecida por PPG e incluso se negaron a firmarla. Además, sostienen que, de considerarse la aplicación, la garantía establece hasta 60 días después que cualquier condición cubierta haya ocurrido para que se presente una reclamación. Adicionalmente, posee unas cláusulas de exclusión que deben ser consideradas. Por otro lado, arguyen que las partes firmaron un acuerdo transaccional en el que se les concedió un total de 59 pailas de pintura, el cual fue violado por el Consejo de Titulares al imponer

la presente reclamación. Exponen que el deterioro del edificio es el resultado de defectos y daños preexistentes de la infraestructura.

Atendidos los planteamientos de ambas partes, el 23 de agosto de 2022, el 20 de diciembre de 2022 y el 16 de febrero de 2023, D.A.Co. celebró Vista Administrativa. En ésta las partes presentaron evidencia de los contratos otorgados junto con las garantías. Además, sometieron en evidencia unas 23 fotos para demostrar las condiciones del edificio y contaron con el testimonio de un perito que declaró sobre las posibles causas de dicho deterioro. Ante ello, luego de evaluar la prueba pericial y documental presentada, D.A.Co. determinó que RM y PPG tienen que honrar la garantía otorgada al Condominio en un término no mayor de 90 días. Resolvió que, aunque el deterioro de la pintura se debía en su mayoría a falta de mantenimiento y humedad, existen otras áreas que no reflejan humedad en las que la pintura se encuentra desmerecida.

Adicionalmente, expresó que, si bien es cierto que el Consejo de Titulares y PPG firmaron un acuerdo transaccional, no es menos cierto que, este había sido por una compra de pinturas previas que alegadamente habían salido defectuosas. Surge del expediente que inicialmente las partes contrataron en el 2008 y en el 2013 se realizó una reclamación por deterioro en la pintura. De dicha reclamación es que nace el acuerdo transaccional. Ahora bien, el consejo no solo aceptó las 59 pailas, sino que además compró unas adicionales para poder pintar todo el edificio. Es de esta compra que se hace la nueva reclamación.

Inconformes con dicha determinación, el 3 de abril de 2023, PPG recurre ante nos, señalando los siguientes planteamientos de error:

   A. **Erró el DACO al concluir que PPG se comprometió a pintar de gratis el condominio, a pesar de que DACO determinó que PPG no formó parte del Contrato para**

**pintar el condominio y que PPG no realizó las labores de pintura en el condominio y la Garantía de PPG excluye la mano de obra.**

B. **Erró el DACO a ordenarle a PPG a que cumpla con la Garantía de PPG, a pesar de que DACO determinó que los problemas de pintura en el condominio son a consecuencia de la falta de mantenimiento, lo cual está excluido bajo la garantía de PPG y a pesar de que la Querellante no presentó evidencia alguna para refutar lo anterior.**

C. **Erró el DACO a ordenarle a PPG a cumplir con la Garantía de PPG, a pesar de que DACO determinó que entre las partes se firmó un relevo liberándolo de responsabilidad.**

D. **Erró el DACO a no imponerle a RM una multa, a pesar de que DACO determinó que RM no era un contratista registrado en el Registro de Contratistas de DACO al momento de otorgar el Contrato de Servicios con el Condominio, en incumplimiento con la Ley Núm. 146 de 10 de agosto de 1995, según enmendada, 32 L.P.R.A. s. 1020 et. seq., y el Reglamento Núm. 8172, Reglamento de Contratistas del 19 de marzo de 2012 de DACO.**

Examinado el recurso en su totalidad y habiendo comparecido las partes, procedemos a exponer el derecho aplicable en aras de resolver.

II.

### A. Revisión Judicial

Es norma conocida que las determinaciones emitidas por las agencias administrativas están sujetas a un proceso de revisión judicial ante el Tribunal de Apelaciones. El Artículo 4.006 (c) de la Ley Núm. 201-2003, según enmendada, conocida como la "Ley de la Judicatura de 2003", dispone que mediante el recurso de revisión judicial el Tribunal de Apelaciones acogerá, como cuestión de derecho, "las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".

Por su parte y conforme a lo anterior, la Sección 4.6 de la Ley Núm. 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, la "LPAU"), autoriza expresamente la revisión de

las decisiones, órdenes y resoluciones finales de estos organismos de la siguiente forma:

> El Tribunal de Apelaciones revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. La mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa, a menos que el Tribunal así lo determine.
>
> El procedimiento a seguir para los recursos de revisión será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones aprobado por el Tribunal Supremo.
> […]

3 LPRA sec. 9676

Igualmente, la Sección 4.2 del precitado estatuto expone que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […]

3 LPRA sec. 9672

Por último, la Regla 57 del Reglamento del Tribunal de Apelaciones establece la instancia en la cual se debe presentar un recurso de revisión judicial ante este foro apelativo. Dicha regla dispone lo siguiente:

> El escrito inicial de revisión deberá ser presentado dentro del término jurisdiccional de treinta días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final del organismo o agencia. Si la fecha del archivo en autos de copia de la notificación de la resolución u orden es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. 4 LPRA Ap. XXII-B, R. 57.

### B. Deferencia Administrativa

El objetivo principal de la revisión judicial se enfoca en garantizar que las agencias administrativas actúen conforme a las facultades concedidas por ley.[2] Constituye una norma reiterada por el Tribunal Supremo de Puerto Rico que los tribunales apelativos deben conceder deferencia a las determinaciones de las agencias administrativas por la experiencia y conocimiento especializado que éstas poseen sobre los asuntos ante su consideración y que por ley se les ha delegado.[3] Por ello, las determinaciones de las agencias administrativas gozan de una presunción de legalidad y corrección que los tribunales deben respetar mientras que no se presente evidencia suficiente para superarla o invalidarla.[4]

La parte que impugna judicialmente una determinación de hecho de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó son irrazonables.[5] Conforme a lo dispuesto en la sección 4.5 de la LPAU[6], las determinaciones de hechos de una agencia del Gobierno "se sostendrán si se fundamentan en evidencia sustancial que obre en el expediente administrativo."[7] A estos fines, el Tribunal Supremo ha establecido que la evidencia sustancial es "aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[8] Empero, la aceptación no puede estar sostenida por un ligero destello de evidencia o por simples inferencias.[9]

---

[2] *Hernández Feliciano v. Mun. de Quebradillas*, 211 DPR 99 (2023); *Oficina de Ética Gubernamental v. Martínez Giraud, 209 DPR 79, 88 (2022).*

[3] *Hernández Feliciano v. Mun. de Quebradillas, supra*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra*, pág. 89; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016).

[4] *Capó Cruz v. Junta Planificación et al.*, 204 DPR 581, 591 (2020).

[5] *González Segarra et al. v. CFSE*, 188 DPR 252, 276–278 (2013); *OCS v. Universal*, 187 DPR 164, 178–179 (2012).

[6] 3 LPRA sec. 2175.

[7] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).

[8] *Capó Cruz v. Junta Planificación et al., supra*, citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[9] *Oficina de Ética Gubernamental v. Martínez Giraud, supra*, pág. 90.

Ahora bien, el criterio rector al momento de pasar juicio sobre la decisión de un foro administrativo es la razonabilidad de la actuación de la agencia, luego de considerar el expediente administrativo en su totalidad.[10] Consecuentemente, la revisión judicial estará limitada a evaluar si la actuación de la agencia fue arbitraria, ilegal o irrazonable, constituyendo así un abuso de discreción.[11] De este modo, el alcance del proceso de revisión se ciñe a determinar: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y; 3) si las conclusiones de derecho fueron las correctas.[12]

Por su parte, las determinaciones de derecho pueden ser revisadas en todos sus aspectos.[13] No obstante, la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo.[14] Los tribunales revisores descartarán el criterio de los entes administrativos cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo.[15] En virtud de ello, los tribunales revisores descartarán el criterio de la agencia administrativa, en el cual cederá la deferencia administrativa, sólo cuando la agencia: 1) erró al aplicar la ley; 2) actuó arbitraria, irrazonable o ilegalmente, o; 3) lesionó derechos constitucionales fundamentales.[16]

Además, el criterio administrativo no podrá prevalecer cuando la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual se

---

[10] *Oficina de Ética Gubernamental v. Martínez Giraud, supra,* pág. 89; *Torres Rivera v. Policía de PR, supra,* pág. 627; *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[11] *Torres Rivera v. Policía de PR, supra,* pág. 626.
[12] *Id.*, pág. 627.
[13] *Oficina de Ética Gubernamental v. Martínez Giraud, supra,* pág. 90; *Capó Cruz v. Junta Planificación et al., supra.*
[14] *Capó Cruz v. Junta Planificación et al., supra.*
[15] *Id.*; *Rolón Martínez v. Supte. Policía, supra,* pág. 36.
[16] *Id.*; *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*

aprobó la legislación y la política pública que la promueve.[17] En ese sentido, la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.[18] Por ende, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable.[19]

Por último, cabe destacar que, en el ejercicio de la función revisora de los tribunales apelativos, los foros apelativos deben diferenciar entre asuntos de interpretación estatutaria, del cual los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa.[20]

### C. Contratos[21]

Nuestra jurisdicción establece que las obligaciones nacen de la ley, de los contratos y cuasicontratos y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia.[22] Por su parte los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.[23] Siendo ello así, en Puerto Rico opera el principio de libertad de contratación y se dispone que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."[24]

---

[17] *Oficina de Ética Gubernamental v. Martínez Giraud, supra*, págs. 90-91.
[18] *Moreno Lorenzo v. Dept. de la Familia*, 207 DPR 833, 843 (2021).
[19] *Id.*
[20] *Hernández Feliciano v. Mun. de Quebradillas*, 2023 TSPR 6; *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[21] Los hechos y el contrato aquí celebrado ocurrieron bajo las disposiciones del derogado Código Civil de Puerto Rico de 1930.
[22] Art. 1042 Código Civil de Puerto Rico, 31 LPRA sec. 2992
[23] Art. 1206 Código Civil de Puerto Rico, 31 LPRA sec. 3372
[24] Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372

Ahora bien, para que un contrato sea válido este debe contener consentimiento, objeto y causa de la obligación que se establezca.[25] Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato.[26] Por lo que, el mero consentimiento perfecciona el contrato y desde entonces obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[27] Ante dicha situación, una vez perfeccionado el contrato este tiene fuerza de ley entre las partes.[28]

En virtud de lo anterior, cuando las partes otorgan un contrato y éste es claro, debe interpretarse en el sentido literal de la palabra. Esto, en virtud del Art. 1233 del Código Civil de Puerto Rico de 1930, el cual expresa que, "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.[29]"

En específico, el contrato de compra y venta es definido por nuestro Código Civil de la siguiente manera: "Por el contrato de compra y venta uno de los contratantes se obliga entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente."[30] Según se desprende del Código Civil, el vendedor se encuentra obligado a la entrega y saneamiento de la cosa objeto de la venta.[31]

**D.    *Ley 146 de 10 de agosto de 1995, según enmendada, mejor conocida como Ley de Registro de Contratistas.***

---

[25] Art. 1213, Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3391
[26] Art. 1214 Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3401
[27] Art. 1210 Código Civil de Puerto Rico de 1930, 31 LPRA Sec. 3375
[28] Art. 1044 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2995.
[29] Art. 1233 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471
[30] Art. 1334 Código Civil de Puerto Rico, 31 LPRA sec. 3741
[31] Art. 1250 Código Civil de Puerto Rico, 31 LPRA sec. 3801

La Ley Núm. 146 de 1995, según enmendada, mejor conocida como Ley de Registro de Contratistas nace con el propósito de proteger a los consumidores en casos de incumplimiento o cumplimiento defectuoso por parte del contratista. Es por esto, que esta ley obliga el registro de toda persona natural o jurídica que se dedique a la industria de la construcción y les requiere una fianza. En virtud de esta ley, D.A.Co. promulgó el Reglamento Núm. 8172 del 19 de marzo de 2012, el cual se titula "Reglamento para el Registro de Contratista", su fin es el de crear el Registro de Contratistas adscrito a la oficina de Construcción del D.A.Co.

Nos dice esta ley que:

Se ordena la inscripción de todo contratista, según definido en esta Ley, en el Registro de Contratistas. Este Registro estará disponible para la revisión del público.

Con el propósito de servir como medio de orientación a toda la ciudadanía, el Departamento de Asuntos del Consumidor vendrá obligado a mantener el Registro de Contratistas en sus oficinas accesible al público y publicar en su página de Internet la información relativa a las querellas que se generen en contra de contratistas por razón de incumplimiento o que el trabajo resulte defectuoso. Sólo se publicarán aquellas determinaciones del DACO que sean finales y firmes y que hayan sido decididas a favor del consumidor.

Igualmente, el Departamento informará a través del Registro de Contratistas los mecanismos existentes y los requisitos para que la ciudadanía pueda radicar una querella contra un contratista.

Una vez una determinación del DACO advenga final y firme, deberá publicarse inmediatamente en el Registro Electrónico y la agencia deberá notificar a sus oficinas para que incluyan la información en su Registro.[32]

A tenor con lo anterior cuando, un contratista no consta inscrito en el registro, según lo dispuesto en esta ley se enfrenta a las siguientes penalidades:

Toda persona natural o jurídica a quien le sea aplicable lo dispuesto en el artículo 2 precedente y que

---

[32] Art. 2 de la Ley de Registro de Contratistas de 1995, Ley Núm. 146-1995 (23 LPRA sec. 1020b).

no cumpla con las disposiciones de esta Ley, incurrirá en delito menos grave y, convicta que fuere, será penalizada con multa que no excederá de quinientos (500) dólares o pena de restitución, o ambas penas a discreción del Tribunal. **El Secretario del Departamento de Asuntos del Consumidor podrá optar por imponer una multa administrativa en lugar de presentar una querella criminal, en cuyo caso la multa no podrá exceder de cinco mil (5,000) dólares por cada día en que se incurra en violación a esta ley.** (Énfasis nuestro).[33]

### III.

En el presente recurso PPG trae ante nos múltiples señalamientos de error, que según alega fueron cometidos por D.A.Co. Discutiremos en conjunto el primer y segundo error por estar intrínsecamente relacionados entre sí.

En el **primer y segundo señalamiento de error** el Recurrente alega que D.A.Co. no debió concluir que PPG debía cumplir con la garantía otorgada entre las partes, cuando fue la misma agencia quien determinó que los problemas se debían a la falta de mantenimiento del condominio, lo cual se encuentra contemplado en las cláusulas de exclusión de la Garantía. Además, arguyen que D.A.Co. erró al interpretar que PPG se comprometió a pintar gratis el condominio, cuando este nunca formó parte del contrato de mano de obra.

Es importante destacar que los Tribunales Apelativos deben conceder deferencia a las determinaciones de las Agencias Administrativas por la experiencia y conocimiento especializado que poseen sobre los asuntos ante su consideración. Consecuentemente, la revisión judicial se encuentra limitada a evaluar si la actuación de la agencia fue arbitraria, ilegal o irrazonable, constituyendo así un abuso de discreción. Ante esto, los tribunales revisores descartarán el criterio de la agencia cuando esta haya errado en aplicar la ley, actúe arbitrariamente o lesione

---

[33] Art. 5 de la Ley de Registro de Contratistas de 1995, Ley Núm. 146-1995 (23 LPRA sec. 1020e).

derechos constitucionales fundamentales. Es por lo antes mencionado que, el criterio de una agencia no podrá prevalecer cuando la interpretación realizada provoque un resultado incompatible o contrario al propósito para el que se creó la ley.

El caso ante nos surge de una reclamación realizada por el Consejo de Titulares del Condominio Patio Señorial. Según se desprende del expediente, estos otorgaron un contrato con PPG para la compra de unos materiales para pintar el condominio. Arguyen que, junto a este contrato se otorgó otro de garantía por cinco años. No obstante, no surge del expediente que este haya sido consentido por ambas partes. Del contrato de garantías presentado ante nos, solo consta la firma de Miguel Santiago, quien funge como gerente regional de PPG, mas no consta la firma de ninguno de los representantes del Condominio de Patio Señorial. De hecho, de la transcripción presentada se desprende que el Sr. René Vélez Reyes, quien es presidente de la junta directiva del condominio Patio Señorial, testificó en el contrainterrogatorio realizado por la representante legal de PPG, que en el documento solo constaba la firma del Sr. Miguel Santiago, mas no veía firma alguna del entonces representante del condominio.

Como discutimos anteriormente, en nuestro ordenamiento judicial se requiere que para que un contrato sea válido debe contener consentimiento, objeto y causa. Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. Por lo que, el mero consentimiento perfecciona el contrato. Ahora bien, si de un contrato no consta el consentimiento de una de las partes, significa que no fue perfeccionado, por lo que no surte efecto.

Ante este escenario, **es forzoso concluir que la agencia erró al interpretar que se había otorgado un contrato de garantía, debido a que este adolece de consentimiento por parte del**

**Consejo de Titulares por lo que no existe contrato alguno que obligue a PPG a responder por los alegados defectos de la pintura.** Ahora bien, aún si se concluyera que el contrato de garantía es válido, PPG no respondería. Esto debido a que, se demostró que la causa mayor para el deterioro de la pintura es la falta de mantenimiento al condominio y la humedad. Siendo así, el contrato de garantías posee una cláusula de exclusión que lee como sigue:

**WHAT THIS LIMITED WARRANTY DOES NOT COVER:**

> **Exclude from coverage under this limited Warranty are water intrusion**, blistering, chalking, fading and loss adhesion, resulting, directly or indirectly, from causes other than defects in the PPG paint, or from causes beyond the control of PPG Architectural Coatings Inc. such as, but not limited to: excessive heat or moisture, hail, floods, hurricanes, windstorm and other Acts of God, **improper cleaning or maintenance**, mechanical or electrical damage, abrasion, collision, environmental pollution, condensation or other moisture under or from within the building or surface, settling or movement of the building, job field conditions, improper job preparation, delaminating of existing materials, structural defects of damage, seepage or leakage through uncoated areas of building, any application of the coating to areas so located as to make effective application. (Énfasis nuestro).

Conforme a ello, las razones por las que la pintura presentó defecto se encuentran excluida del contrato de garantía, dejando a PPG libre de toda responsabilidad. Por otra parte, en las determinaciones de hechos realizas por D.A.Co. este concluyó que en el contrato de garantía PPG se comprometió a pintar gratis cualquier defecto resultante en más que descarado, perdida de color, abrasión o perdida de la pintura adherida u otra cosa más que la frescura o vitalidad de la pintura. No obstante, entendemos no le asiste la razón ya que en realidad la garantía lee como sigue: "PPG Architectural Coating, Inc. warrants to the undersigned Building Owner that for Warranty Period of 5 years of the Warranty are set

forth bellow, **PPG paints will be free of defected** resulting in more than minima peeling, [...]" En conclusión, lo que se garantiza es que las pinturas estarán libres de defectos, mas no que estas serán gratis. Siendo ello así, entendemos que PPG no responde en ninguno de los dos casos antes mencionados.

No obstante, como es sabido, en el derecho contractual opera el principio de la buena fe. Es bajo este principio que se deben otorgar todos los contratos. El simple hecho de que no exista una garantía no exime de responsabilidad a las partes, sin embargo, la mala fe no se presume es por esto que es responsabilidad de quien la alega presentar evidencia que la demuestre, lo cual entendemos no sucedió en el caso ante nuestra consideración. Lo cierto es que, los Recurridos no demostraron que PPG hubiese actuado de mala fe.

Por otra parte, los recurrentes señalan en el **tercer planteamiento de error** que PPG y el Consejo de Titulares otorgaron un acuerdo transaccional por lo que a estos no les correspondía responder por cualquier defecto que presentaran las pinturas. A lo que entendemos no le asiste la razón, nos explicamos.

Las partes del presente pleito contrataron inicialmente en el 2008 para la compra de unos materiales para pintar el condominio objeto de este pleito. No obstante, en el 2013 el Consejo de Titulares presentó reclamación ante PPG debido a que la pintura se desmereció. Ante esta situación, PPG le ofreció un acuerdo transaccional en donde el Consejo de Titulares renunciaba a incoar una causa de acción en su contra y a cambio ellos les otorgarían un total de 59 pailas de pinturas para que repintaran las áreas que estaban afectadas. El Consejo de Titulares aceptó la oferta, sin embargo, no fue hasta el 2018 que buscaron las pailas ofrecidas y además compraron nuevas pailas para pintar todo el condominio. De esta nueva compra es que se presenta la nueva reclamación. Por

lo que, el acuerdo transaccional resolvía en cuanto al primer contrato de compra y venta celebrado, mas no del segundo. Siendo ello así, entendemos que la agencia no cometió dicho error.

**En el cuarto y último planteamiento de error**, PPG señala que D.A.Co. debió multar a RM por este no constar inscrito en el Registro de contratista, así como lo dispone la Ley Núm. 146-1995.

Lo cierto es que, la Ley Núm. 146-1995 dispone que todo contratista debe estar inscrito en el Registro de contratista adscrito a D.A.Co. Según lo dispuesto en el artículo 5, los contratistas que incumplan con dicho deber incurrirán en delito menos grave. El secretario de D.A.Co. podrá optar por imponer una multa administrativa en lugar de presentar una querella criminal en cuyo caso, la multa no podrá exceder de $5,000 por cada día en que incurra en la violación de la mencionada ley.

A tenor con lo anterior, D.A.Co. tiene la capacidad de emitir multas a todos los contratistas que incumplan con lo establecido por la Ley Núm. 146-1995. Sin embargo, ninguna de las partes afectadas levantó este planteamiento en la agencia, no es hasta este recurso de revisión judicial que solicitan que se multe a RM por no constar inscrito en el Registro de Contratistas. Somos de la opinión de que esta alegación debió presentarse inicialmente ante el foro administrativo correspondiente y no ante el Tribunal de Apelaciones.

IV

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, modificamos la determinación de D.A.Co., a fin de relevar a la parte recurrente de la responsabilidad determinada por la agencia a base de la garantía objeto de análisis. Así modificada, confirmamos la Resolución emitida por D.A.Co.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones